# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

**Muhammad Jalil Afridi,**

Plaintiff,

v.

**Karoline Leavitt**

in her official capacity as White House Press Secretary,

Defendant.

Case: 1:25-cv-04460
Assigned To : Friedrich, Dabney L.
Assign. Date : 12/22/2025
Description: FOIA/ Privacy Act (I-DECK)

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## I. INTRODUCTION

1. This is a civil action seeking declaratory and injunctive relief for ongoing violations of the First and Fifth Amendments to the United States Constitution arising from the arbitrary and unexplained denial of press access to a veteran journalist who has covered the White House across three presidential administrations.

RECEIVED
DEC 2 2 2025
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

1

2. Plaintiff Muhammad Jalil Afridi is an internationally known journalist with 27 years of professional experience, including over a decade of continuous coverage of the White House, the Pentagon, and the U.S. State Department.
3. Despite this long and undisputed record, Plaintiff has been entirely barred from entering the White House and from attending White House press briefings conducted by Defendant, without notice, explanation, or due process.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction).
5. Venue is proper in this Court under 28 U.S.C. § 1391(e) because Defendant performs official duties in the District of Columbia and the events giving rise to this action occurred here.

## III. PARTIES

6. Plaintiff Muhammad Jalil Afridi is a journalist and Managing Editor of The Frontier Post, a newspaper with international circulation.
7. Plaintiff attended high school and college in the United States, has no criminal history in the United States or anywhere in the world, and has lawfully worked as a journalist for decades.
8. Defendant Karoline Leavitt is the White House Press Secretary and is responsible for administering access to White House press briefings and press engagement events.

## IV. STATEMENT OF FACTS

### A. Longstanding White House Press Access

9. Plaintiff has covered the White House since the administration of Barack Obama, attending numerous press briefings and presidential events.
10. Plaintiff continued covering the White House during the administration of Donald Trump, attending press briefings and multiple events at which the President was present.
11. Plaintiff also attended White House press briefings and presidential events during the administration of Joe Biden.

2

12. Plaintiff's access during these administrations was consistent, peaceful, and uninterrupted, and was never revoked for security, disciplinary, or legal reasons.

## B. Total Exclusion During the Current Administration

13. During the current administration, Plaintiff has not been allowed to enter the White House even once.
14. Plaintiff has been denied access not only to presidential events, but even to routine press briefings conducted by Defendant, without explanation.
15. Plaintiff does not know the reason for his exclusion. He has never been notified of any alleged violation, never received a warning, and has never been provided a process to contest the denial.

## C. Secret Service Confirmation of No Security Issue

16. Plaintiff repeatedly contacted Anthony Guglielmi, Chief Spokesperson of the United States Secret Service.
17. Mr. Guglielmi was consistently courteous and responsive by telephone and email.
18. Mr. Guglielmi explicitly informed Plaintiff that:

- There was no issue from the Secret Service's side
- Plaintiff should contact the White House media team directly regarding access

19. Mr. Guglielmi further suggested that Plaintiff submit a FOIA request to the Secret Service, which Plaintiff did.
20. The Secret Service's FOIA response showed that Plaintiff's updated work authorization document was missing from the file.
21. Plaintiff promptly submitted his updated work permit in April, yet despite this correction, access was still denied.

## D. Media Team Conduct and Lack of Response

22. On several occasions, the White House media team sent Plaintiff the official press access pro forma to attend briefings.
23. Plaintiff completed and returned each form as instructed.

3

24. No response ever followed, and access was never granted.
25. Plaintiff has been left in complete uncertainty as to why he is excluded, despite full compliance.

### E. Plaintiff's Journalism and Public Interest Work

26. Plaintiff's journalism has consistently addressed matters of U.S. national security and foreign policy in good faith.
27. Following the U.S. withdrawal from Afghanistan, Plaintiff raised questions at the State Department regarding the vetting process of Afghan evacuees.
28. Plaintiff questioned Pentagon officials regarding the Abbey Gate bombing, where 13 U.S. Marines lost their lives, and called for reinvestigation.
29. Although the prior administration denied the need for reinvestigation, President Trump later announced that Pakistan had handed over a new suspect related to the Abbey Gate tragedy—confirming Plaintiff's earlier concerns.
30. Six years ago, Plaintiff raised concerns at the Pentagon about the emergence of ISIS in Afghanistan. At the time, a CENTCOM commander stated he was unaware. Subsequent events proved Plaintiff's concerns accurate.
31. Plaintiff's reporting has always been aimed at the betterment of American policy, national security, and accountability.

### F. Health, Safety, and Lack of Any Threat

32. Plaintiff poses no threat whatsoever to White House security.
33. In 2020, Plaintiff suffered brain swelling, was placed in a coma, underwent a tracheotomy, and required a stomach feeding tube.
34. Plaintiff's physical condition is such that he cannot even compete in running with a seven-year-old child.
35. Any suggestion that Plaintiff presents a security risk is factually baseless.
36. Plaintiff's father was also a renowned journalist, and Plaintiff's career reflects a lifelong commitment to democratic values learned in the United States.

# V. CLAIMS FOR RELIEF

### COUNT I – FIRST AMENDMENT (Viewpoint Discrimination)

4

37. Defendant's actions constitute unconstitutional viewpoint discrimination by selectively denying Plaintiff access to press briefings without justification.
38. Once the government opens a forum to the press, it may not exclude journalists arbitrarily or based on viewpoint.

## COUNT II – FIFTH AMENDMENT (Due Process)

39. Defendant denied Plaintiff a protected liberty interest in press access without:

- Notice
- Explanation
- Opportunity to respond

40. This violates the Due Process Clause of the Fifth Amendment.

# VI. RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

A. Declare Defendant's actions unconstitutional

B. Issue an injunction ordering Defendant to permit Plaintiff to attend White House press briefings conducted by her

C. Prohibit further arbitrary exclusion without due process

D. Grant such other relief as the Court deems just and proper

# VII. LIMITED SCOPE OF REQUEST

41. Plaintiff acknowledges heightened security concerns surrounding presidential events.
42. At this stage, Plaintiff does not seek access to presidential events involving the President.
43. Plaintiff seeks only access to routine White House press briefings conducted by Defendant.

*[Signature]* Dec 22/2025

Muhammad Jalil Afridi
3000 South Randolph Street
Apt 267, Arlington
VA 22206
Ph: 415 370 4551
Email: AFRIDIJALIL@gmail.com